**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Brenda K. Baxter, | : | Case No. 3:08-CV-1513 |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM DECISION AND ORDER** |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final determination denying her claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act), 42 U. S. C. §§ 416 (i) and 423 and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U. S. C. §§ 1381 *et seq*. Pending are the parties' Briefs on the Merits and Plaintiff's Reply (Docket Nos. 17, 20, & 21). For the reasons that follow, the Commissioner's decision is affirmed.

## II. PROCEDURAL BACKGROUND

On December 16, 2003, Plaintiff filed applications for DIB and SSI alleging that she had been disabled since October 30, 2003 (Tr. 59-61, 318-320). Upon denial of the applications both initially and upon reconsideration, Plaintiff requested a hearing, *de novo*, before an Administrative Law Judge (ALJ)

(Tr. 15, 323-326, 328-330). On August 9, 2006, ALJ Steven Nealy conducted a hearing during which Plaintiff, represented by counsel, and Vocational Expert (VE) Dr. Richard Szydlowski appeared and testified (Tr. 355). On March 29, 2007, the ALJ found that Plaintiff was not disabled under Title II or Title XVI of the Act (Tr. 23-34). The Appeals Council denied review on April 22, 2009, rendering the ALJ's Decision the final decision of the Commissioner (Tr. 4-6). Plaintiff then filed a timely action in this Court seeking judicial review of the Commissioner's unfavorable decision.

### III. FACTUAL BACKGROUND

*1.   Plaintiff's Testimony*

Plaintiff testified that she was 47 years of age, single, and lived alone. She completed the eleventh grade and was last employed as a machine operator. She also had past work experience as a home health aide, hand packager and plastic parts trimmer (Tr. 32, 360-361).

Plaintiff developed fibromyalgia, carpal tunnel syndrome, numbness that radiated up her arm, severe sharp pain in her breasts and had difficulty sleeping (Tr. 359. 362, 363, 369). Symptoms included persistent swelling of her ankles, feet and hands and persistent pain in her ankles, hands and back (Tr. 362-363). Bad days, characterized by intense swelling, were prevalent 75% of the month (Tr. 370).

Apparently, the swelling in her ankles and feet caused instability resulting in a fall (Tr. 367). Consequently, she used a cane while walking (Tr. 367). Her feet swelled to the extent that she could not wear shoes (Tr. 371). Wearing support hose failed to minimize swelling. As long as Plaintiff limited her movement and/or activity, the swelling was not "as bad" (Tr. 368, 369). Medication had been prescribed to control the swelling; however, side effects from the medication included memory problems (Tr. 364).

Most of Plaintiff's day was spent lying down on her side (Tr. 371, 375). There were several days

each month that Plaintiff did not get out of bed until she had taken her medication (Tr. 371). When she did get up, she began the day by walking her dog (Tr. 364). Plaintiff's daughter did the housework, as needed. She also helped to dress, shower and transport her mother (Tr. 365-367). Plaintiff's meals were microwavable. Her doctor recommended eliminating flour and sugar from her diet (Tr. 366).

Plaintiff opined that she could sit for up to 45 minutes, stand for ten minutes and walk for ten minutes (Tr. 364). During the past two months, she walked with a cane (Tr. 367). Plaintiff reported difficulty manipulating objects. There were times that she was unable to lift a cup of coffee without spilling it (Tr. 365).

*2.     The VE's Testimony*

The VE classified Plaintiff's past relevant work of packager/packer as unskilled work requiring a medium level of exertion. Plaintiff's work as a plastics part trimmer was considered unskilled, light work even though Plaintiff may have performed it at the sedentary level (Tr. 381). The work of home health aid, which Plaintiff worked for twenty years, was considered semiskilled at the medium level of exertion.

The hypothetical question included, *inter alia*, an individual of Plaintiff's age, education and past work history, limited to light work, and who could perform Plaintiff's past relevant work as a plastics part trimmer and packaging. If the same hypothetical person could perform sedentary work, then the person could perform work as a plastics part trimmer, information clerk, cashier, electronic assembler and security monitor (Tr. 382, 383). There were 4,000 information clerk-type jobs, 8,500 electronic assembly jobs, and 5,000 cashier jobs. There were 3,000 security monitor jobs and roughly 1,500 inspector, sorter and checker positions (Tr. 383).

The need to rest and lie down half of the time during the day would exclude all employment.

The inability to handle and grip would not exclude the information clerk or security monitor jobs (Tr. 384).

## IV.  MEDICAL EVIDENCE

Dr. Wesley W. Hedges, an obstetrician/gynecologist, found no left breast mass on October 23, 2003 (Tr. 129).  The venous Doppler examination of Plaintiff's right leg conducted on November 19, 2003, showed no evidence of deep vein thrombosis (Tr. 133).  In December 2003, the two views of Plaintiff's thoracic spine were unremarkable (Tr. 132).

Dr. Rugen M. Alda, M.D., became Plaintiff's primary care physician on January 5, 2004 (Tr. 254).  At that time, Dr. Alda addressed Plaintiff's complaints of severe lumbo-sacral pain, mild radiculopathy and disc herniation (Tr. 301).  In his opinion, Plaintiff had marked limits in her ability to push/pull and bend (Tr. 302).

On March 4, 2004, Dr. D. Ross Irons, a fellow of the American College of Surgeons, explained that Plaintiff had fibrocystic disease, nonmalignant, and confirmed that there was no evidence of deep venous thrombosis or clotting (Tr. 144).

Plaintiff treated with Dr. Steven Benedict, M.D., for chronic low back pain on March 22, 2004.  The neurological examination showed mild point tenderness and the results from the lumbar and thoracic plain films were normal.  Dr. Benedict determined that Plaintiff's low back pain was "musculoskeletal." Several pain relievers were prescribed (Tr. 151, 152).

On April 7, 2004, Dr. Mary Wall, a radiologist, found a slight bulge at L5-S1 without significant herniation.  On April 22, 2004, Dr. Wall discovered a cyst underneath Plaintiff's right nipple (Tr. 283 309-310).

Dr. Alda diagnosed Plaintiff with fibromyalgia and started her on a treatment program for depression/anxiety on April 30, 2004. Prednisone failed to relieve her symptoms (Tr. 251).  Thereafter,

Dr. Alda addressed complaints of breast pain, chest pain, swollen ankles and glands (Tr. 245, 248, 249, 250, 251).

On May 28, 2004, James N. Spindler, M.S., a psychologist, diagnosed Plaintiff with alcohol dependence, with sustained full remission, polysubstance dependence, chronic neck, shoulder, lower back and legs pain, psychological stressors and transient symptoms, expectable reactions to psychosocial stressors and no more than slight impairment in social, occupational, or school functioning (Tr. 159-160).

Dr. Roseann F. Umana, Ph.D., opined on June 27, 2004, that Plaintiff had no medically determinable impairment; thus, there were no functional limitations (Tr. 162, 172).

Plaintiff's liver enzymes, glucose and cholesterol levels all exceeded the normal range of values on August 11, 2004 (Tr. 279). On August 28, 2004, Plaintiff tested positive for the Hepatitis virus (Tr. 275). In September 2004, Plaintiff began Hepatitis C therapy which continued until March 2005 (Tr. 303-306).

On October 1, 2004, Dr. David West, M. D., a diagnostic radiologist, interpreted the results from a stress test as unremarkable and Dr. Edward Hemeyer, M. D., a family practitioner, determined that there was no evidence of "dysrhythmia" or ischemia (Tr. 273, 274).

On October 7, 2004, Dr. Alda found no evidence of acute process in the chest arising since the same examination was conducted on December 20, 1995. Her chemical profile showed an elevated glucose level, an elevated lactate dehydrogenase level and the presence of marijuana (Tr. 204, 205). Later in October, Dr. Alda addressed Plaintiff's total body weakness arising from the medications (Tr. 244).

The specimen collected on November 5, 2004, and February 1, 2005 tested negative for the

5

Hepatitis C virus (Tr. 265, 271). Plaintiff was treated for bruising to her right wrist on November 12, 2004 (Tr. 307). On November 29, 2004, Plaintiff was treated for severe pain in her neck, legs, tops of her feet and arms (Tr. 243). Dr. Alda found no evidence of malignancy in Plaintiff's breast on December 30, 2004 (Tr. 197, 201).

In December 2004, Dr. Edward Hemeyer diagnosed Plaintiff with a fungal infection. A diet change was prescribed (Tr. 291).

On January 13, 2005, Dr. Hemeyer noted that Plaintiff continued to experience adverse affects of Hepatitis C (Tr. 290). Plaintiff deviated from the prescribed diet and her symptoms worsened (Tr. 289).

In June 2005, Dr. Benedict prescribed medication for treatment of pain (Tr. 287).

On June 10, 2005, Dr. Alda conducted his last examination and described Plaintiff's medical conditions as fibromyalgia, lumbar strain, Hepatitis C, nicotine addiction, insomnia, hypertension, carpal tunnel syndrome and chronic obstructive pulmonary disease (COPD) (Tr. 298). Dr. Alba opined that Plaintiff had marked limitations in her ability to engage in repetitive foot movements, push/pull, bend, reach and handle (Tr. 299).

In August 2005, x-rays of Plaintiff's right thumb showed a fracture to the base. X-rays of the right and left clavicle were normal (Tr. 263)

On September 7, 2005, Dr. West found a small tearing injury along the inferior lateral malleolus (Tr. 260).

Dr. Christopher A. Pensiero, a podiatrist, found old scar tissues or a partial tear on the anterior talo fibular ligament on Plaintiff's right foot (Tr. 315). The inflamed area was resolved with a corticosteroid injection administered on September 15, 2005 (Tr. 314). Plaintiff's foot felt "very, very

good" on September 28, 2005 and on July 5, 2006, she reported that her walking had improved (Tr. 313). In the meantime, Dr. Benedict addressed Plaintiff's complaints of muscle tightening on September 21, 2005 (Tr. 286).

Dr. Alda prescribed medication to treat excruciating pain on October 24, 2005 (Tr. 222). In November 2005, Dr. Alda treated Plaintiff for shoulder pain with a pain reliever and conducted pulmonary function tests. The results from the pulmonary function tests were consistent with early COPD (Tr. 217, 219, 220-221).

On December 1, 2005, the results from the computed tomography (CT) scan of Plaintiff's brain were considered normal. The results from the chest X-ray showed no active disease in process (Tr. 187). From the samples of bodily fluids collected on December 1, 2005, there was evidence of depressant medications, marijuana and an abnormal level of ketones (Tr. 188). Plaintiff's glucose level was also elevated (Tr. 190).

On December 7, 2005, Dr. Benedict prescribed medication designed to treat fibromyalgia and depression (Tr. 285). Dr. Alda resolved a problem with left foot numbness by advising Plaintiff on December 19, 2005, not to take both Cymbalta and Zoloft (Tr. 215).

On December 21, 2005, Dr. Henry G. Adams, M. D., a diagnostic radiologist, found heal spurs in four views of the right ankle. There was no evidence of acute bone tissue abnormality (Tr. 258).

A specimen collected on January 25, 2006, tested negative for the Hepatitis C virus (Tr. 255).

On January 30, 2006, Dr. Alda renewed Plaintiff's prescriptions for anxiety/depression medication; treated Plaintiff for swollen and bruised feet; and referred Plaintiff to a podiatrist for treatment of probable heel spurs (Tr. 212, 213, 214).

The results from the bone density test administered on February 1, 2006, showed lower than

normal lumbar spine bone mineral density but normal left hipbone mineral density (Tr. 181).

Dr. Alda prescribed a cockup wrist splint when Plaintiff sprained her left wrist on April 15, 2006. A pain reliever was also prescribed (Tr. 175). The X-rays, however, did not show evidence of fracture, dislocation or other bony disease or injury in the left hand or wrist (Tr. 178). Dr. Alda treated Plaintiff on April 3, 2006, for bronchitis (Tr. 210).

## V.  STANDARD OF DISABILITY

DIB and SSI are available only for those who have a "disability."  *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007) (*citing* 42 U.S.C. § 423(a), (d); *See also* 20 C.F.R. § 416.920).  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id.* (*citing* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); *See also* 20 C.F.R. § 416.905(a) (same definition used in the SSI context)).

The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical for purposes of this case, and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively:

First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  *Id.* (*citing Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990)).

Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  *Id.*  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  *Id.*

Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is

8

expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. *Id.*

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. *Id.*

For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Id.* (*citing Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001)(internal citations omitted) (second alteration in original)). If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates. *Id.* (*citing* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).

## VI. THE ALJ'S FINDINGS

The ALJ made the following findings:

1. Plaintiff met the insured status requirements of the Act through December 31, 2005.

2. Plaintiff had not engaged in substantial gainful activity since October 30, 2003, the alleged onset date.

3. Plaintiff had the following severe medical impairments, namely, fibromyalgia, possible Hepatitis C and problems with her feet. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C. F. R. Part 404, Subpart P, Appendix F.

4. Plaintiff had the residual functional capacity to perform unskilled sedentary exertional level work activity.

5. Plaintiff was unable to perform any past relevant work.

6. Plaintiff was a younger individual aged 45-49, on the alleged disability date. She had an eleventh grade education and was able to communicate in English.

7. Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff

       was not disabled whether or not she had transferrable skills.

8.     Plaintiff was not under a disability as defined in the Act from October 20, 2003 through March 29, 2007.

(Tr. 23-34).

## VII.  STANDARD OF REVIEW

The federal district court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Title 42 U.S.C. § 405(g) permits the district court to conduct judicial review over the final decision in a civil action.  *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832-833 (6th Cir. 2006).  Judicial review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.  *Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003) (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Commissioner Social Security Administration*, 402 F.3d 591, 595 (6th Cir. 2005) (*citing Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir.2004) (*quoting Walters v. Commissioner of Social Security,* 127 F.3d 525, 528 (6th Cir. 1997)).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007).

In deciding whether to affirm the Commissioner's decision, it is not necessary that the court agree with the Commissioner's finding, as long as it is substantially supported in the record.  *Id.* (*citing Her v. Commissioner of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999)).  The substantial evidence

standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth, supra,* 402 F. 3d at 595 (*citing Warner, supra*, 375 F.3d at 390) (*citing Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied*, 103 S. Ct. 2478 (1983) (internal quotation marks omitted)).  If substantial evidence supports the Commissioner's decision, this Court will defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Id.* (*citing Warner,* 375 F.3d at 390) (*quoting Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)).

## VIII.  DISCUSSION

### A.  RESIDUAL FUNCTIONAL CAPACITY.

The ALJ adopted Dr. Alda's diagnosis that Plaintiff's severe impairments included fibromyalgia. However, the nature of fibromyalgia is that there are no objective clinical, diagnostic or laboratory tests to document its presence or severity.  In fact, the Northern District of Ohio has acknowledged that it is error to reject the opinion of a treating physician on the finding of fibromyalgia if the treating physician did not include objective clinical, diagnostic and/or laboratory findings.  *Swain v. Commissioner of Social Security,* 297 F. Supp. 2d 986, 990 (N.D. Ohio  2003).  Therefore, Dr. Alda's opinions of Plaintiff's residual functional capacity and her inability to work on a full-time basis would not be based on objective clinical, diagnostic or laboratory findings The ALJ found that the absence of objective indicators within Dr. Alda's treatment records provided the basis for not giving complete deference to Dr. Alda's findings on residual functional capacity.

A claimant's residual functional capacity is an assessment of physical and mental work abilities- what the individual can or cannot do despite his or her limitations.  *Converse v. Astrue,* 2009 WL 2382991, *8 (S. D. Ohio 2009) (*citing* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see Howard v.*

*Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir. 2002)).  Residual functional capacity is an administrative assessment of the extent to which an individual's medically determinable impairment or impairments, including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.  *Id.* (*citing* SOCIAL SECURITY RULING 96-8p, POLICY INTERPRETATION RULING TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS (July 2, 1996)).

The Regulations charge ALJs and the Commissioner with the responsibility for assessing a claimant's residual functional capacity.  *Id.* (*citing* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)).  The ALJ must consider all of the relevant medical and other evidence provided by the claimant.  20 C. F. R. §§ 404.1545(e)(3); 416.945(e)(3) (Thomson Reuters/West 2009).  Consideration will be given to any statements provided by medical sources as to what the claimant can still do.  20 C. F. R. §§ 404.1545(e)(3); 416.945(e)(3) (Thomson Reuters/West 2009).

In contrast, the Commissioner more generally considers medical source statements as "medical opinions submitted by acceptable medical sources, including treating sources and consulting examiners, about what an individual can still do despite a severe impairment(s) . . . " *Id.* (*citing* SOCIAL SECURITY RULING 96-5p).  The Regulations distinguish between the assessment of a claimant's residual functional capacity versus a medical source opinion about a claimant's work abilities.  *Id.*

The issue in this dispute is actually whether the ALJ must rely on Dr. Alda's unsubstantiated opinions on residual functional capacity.  Acknowledging that Dr. Alda's opinions were replete with unresolved inconsistencies, that Dr. Alda's opinions were based on Plaintiff's subjective complaints and Dr. Alda's opinions regarding residual functional capacity were based on his experiences as a "specialist in environmental allergies," the ALJ adopted Dr. Alda's diagnosis that Plaintiff had fibromyalgia

consistent with *Swain, supra* (Tr. 299). However, the Court in *Swain*, did not reapportion the responsibility for assessing residual functional capacity. Under the Act, the ALJ, not Dr. Alda, is still responsible for determining residual functional capacity. The ALJ was not bound by Dr. Alda's opinions of Plaintiff's functional limitations or that her functional limitations resulted in an inability to work. In fact he was precluded under 20 C. F. R. §§ 404.1527(e)(2) and 416.927(e)(2) from giving any special significance to the treating source when weighing opinions reserved to the Commissioner. Nevertheless, the ALJ was required to consider Dr. Alda's opinions in assessing residual functional capacity. The ALJ followed the rules, considering and then discounting Dr. Alda's opinions of Plaintiff's residual functional capacity.

**2     PLAINTIFF'S CREDIBILITY**.

Plaintiff contends that the ALJ misinterpreted evidence of Plaintiff's request for a medical leave of absence, the filing of papers for work and statements by Dr. Alda as indicators that Plaintiff was working. Although there was no evidence of earnings, the ALJ assumed that Plaintiff lacked candor in her claims that she was not working.

The ALJ, not the reviewing court, must evaluate the credibility of witnesses, including that of the claimant. *Rogers*, *supra*, 486 F.3d at 247 (*citing Walters, supra,* 127 F.3d at 531; *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir. 1990); *Kirk, supra*, 667 F.2d at 538). The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Id.* (*citing* SOC.RUL.96-7p, 1996 WL 374186, at * 4). Such credibility determinations must find support in the record. *Id*. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the

entire case record." *Id.* The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency of the various pieces of information contained in the record should be scrutinized. *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tend to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.* at 247-248.

Blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence. *Id.* at 248. In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is "substantial" only when considered in isolation. *Id.* at 248, fn. 5. The articulation of reasons for crediting or rejecting particular sources of evidence is absolutely essential for meaningful appellate review. *Id.* (*citing Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985) (*quoting Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

In the present case, the ALJ complied with the Administration's requirements. He based his credibility finding on evidence in the entire case record including medical signs and laboratory findings, Plaintiff's complaints and other information provided by her treating physician, specifically, Dr. Alba's (1) note in November 2003, that Plaintiff was "in home health care" (2) note in December 2003 which read "Pt. currently cannot work due to her current medical condition" (Tr. 138), and (3) prescription dated February 7, 2005: "Pt. has a diagnosis of fibromyalgia and it is interfering with her ability to work. She is unable to do her job performance of home care. We think she is debilitated and cannot work." (Tr. 238). The ALJ did not err in failing to consider these statements. In fact, the regulations provide that the ALJ must consider other information in assessing credibility. Considering that there

14

was no evidence of wages earned, it was reasonable for the ALJ to conclude that Plaintiff required an excuse to be absent from work. The Magistrate will not second guess the ALJ or try to analyze the rationale used to make his decision. The ALJ applied the correct legal standard in considering all of the evidence in assessing credibility. The Magistrate defers to that finding.

**3.      CREDIBILITY AND PAIN ASSESSMENT.**

Plaintiff argues that since the ALJ misunderstood her diagnosis of fibromyalgia, his assessment of pain and credibility is flawed.

When a claimant presents pain as the cause of disability, the decision of the Sixth Circuit in *Duncan v. Secretary of Health and Human Services*, provides the proper analytical framework in a two-pronged test. *Wines v. Commissioner of Social Security,* 268 F. Supp.2d 954, 956 (N. D. Ohio 2003) (*citing* 801 F. 2d 847 (6th Cir. 1986)). There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. *Id.* (*citing Duncan,* 801 F.2d at 853). Under the first prong of this test, the claimant must prove by objective medical evidence the existence of a medical condition as the cause for the pain. *Id.* Once the claimant has identified that condition, then under the second prong he or she must satisfy one of two alternative tests-either that objective medical evidence confirms the severity of the alleged pain or that the medical condition is of such severity that the alleged pain can be reasonably expected to occur. *Id.* at 956-957 (*citing Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994)).

Objective medical evidence of pain includes evidence of reduced joint motion, muscle spasm, sensory deficit, or motor disruption. *Id.* at 1037 (*quoting* 20 C. F. R. § 404.1529(c)(2)). The

15

determination of whether the condition is so severe that the alleged pain is reasonably expected to occur hinges on the assessment of the condition by medical professionals. *Id.* at 1037 (*citing Walters, supra,* 127 F.3d at 531)). Both alternative tests focus on the claimant's "alleged pain." *Id.* (*citing Duncan*, 801 F. 2d at 853). Although ambiguous, the standard requires the ALJ to assume, *arguendo,* pain of the severity alleged by the claimant and then determine if objective medical evidence confirms that severity or if the medical condition is so bad that such severity can reasonably be expected. *Id.*

A claimant's failure to meet the *Duncan* standard does not necessarily end the inquiry. *Id*. The Social Security Administration recognized in a policy interpretation ruling on assessing claimant credibility, *Id.* (*citing* SOCIAL SECURITY RULING (SSR) 96-7p, EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, 61 Fed. Reg. 34483 (July 2, 1996), that in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms will be considered with other relevant evidence in deciding disability. *Id.* Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence. *Id.* (*citing* SSR, *supra*, 61 Fed. Reg. at 34484).

Here, the ALJ concluded that inherent in the diagnosis of fibromyalgia, Plaintiff had a medically determinable condition that gave rise to the alleged pain. Plaintiff met the first prong of this test, proving by objective medical evidence the existence of fibromyalgia as the cause for the pain. *Id.* Plaintiff successfully confirmed the severity of the alleged pain or that the medical condition is of such

severity that the alleged pain can be reasonably expected to occur by taking narcotic pain relievers prescribed to treat the symptoms of pain, thus meeting the second prong of the test (Tr. 27-30). It is clear that the ALJ found Plaintiff's statements of pain credible as they were supported by objective medical evidence.

Although he failed to label his credibility finding, the Magistrate finds that the ALJ considered Plaintiff's credibility consistent with *Duncan*. The credibility finding is supported by substantial evidence and is, therefore, not disturbed.

## VIV.  CONCLUSION

Based on the foregoing, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**


/s/ Vernelis K. Armstrong
United States Magistrate Judge


Date:   September 9, 2009